IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SAVANNAH C.,[1] | No. 1:21-cv-1310-MO |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

MOSMAN, District Judge:

    This matter comes before me on Plaintiff Savannah C.'s Complaint [ECF 1] against Defendant Commissioner of the Social Security Administration. For the reasons given below, I AFFIRM the Commissioner's decision and DISMISS this case.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

## PROCEDURAL BACKGROUND

On March 26, 2019, Plaintiff applied for Child's Insurance Benefits ("CIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, alleging disability beginning July 15, 2018. Tr. 167-71, 172-81. The Social Security Administration ("SSA") denied her claim initially and upon reconsideration. Tr. 55-76, 79-102. Plaintiff appeared and testified at a hearing held on April 7, 2021, before Administrative Law Judge (ALJ) Mark Triplett. Tr. 31-52. On April 28, 2021, the ALJ issued a decision finding that Plaintiff had not been under a disability at any time from the alleged onset date through the date of the decision. Tr. 10-27. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) since July 15, 2018, the alleged onset date. Tr. 16. At step two, the ALJ determined that Plaintiff had the following severe impairments: a depressive disorder; an anxiety disorder; a post-traumatic stress disorder (PTSD); a borderline personality disorder; and a cannabis use disorder. Tr. 16. At step three, the ALJ found no impairment that met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 16. The ALJ assessed Plaintiff's residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform only simple, routine tasks that can be learned in 30 days or less. She can tolerate occasional public interaction. She can tolerate frequent, incidental coworker contact, but cannot engage in team-based or collaborative work. She cannot engage in work involving strict time constraints, such as assembly line work or work involving timed production quotas.

Tr. 17-18.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 21. At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform such as hand packager, laborer, and meat clerk. Tr. 22. The ALJ therefore found Plaintiff not disabled. Tr. 22.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises four issues with the ALJ's decision. Plaintiff argues the ALJ erred by (1) erroneously discounting her symptom testimony, (2) erroneously discounting lay witness testimony, (3) improperly rejecting relevant medical opinions, and (4) failing to incorporate relevant limitations into the RFC, which yielded incomplete hypotheticals to the vocational expert (VE) at step five. I address these issues in turn.

### I.     Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 114, 1112 (9th Cir. 2012) (superseded on other grounds).

First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.*

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the hearing, Plaintiff testified that she does not leave the house without her husband because of her anxiety. Tr. 38. When her husband has to work a night shift, Plaintiff goes to stay with her father because her anxiety is too severe for her to stay alone. Tr. 41. Plaintiff explained that her fear and anxiety have caused her to quit many jobs because she gets overwhelmed, feels trapped, and has to leave. She has had conflicts with coworkers and supervisors over this issue in the past. Tr. 44-45. She has had crying spells at work, and does not go out or run errands alone. Tr. 45.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 18.

However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 18. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with objective medical evidence, her conservative treatment history, and that Plaintiff's daily activities conflicted with her symptom allegations. Tr. 18-20.

*A. Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record).

Concerning Plaintiff's testimony about her anxiety and depression, the ALJ reasonably discounted these allegations as inconsistent with the record. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). At the hearing, Plaintiff testified that her depression and anxiety inhibit her cognition, rendering her totally unable to work. Tr. 38-45. The ALJ juxtaposed this allegation of total disability with, for example, Plaintiff's mental status examinations that showed full alertness, orientation, cooperative behavior, and grossly intact cognition, even when Plaintiff presented as tearful, anxious, and/or depressed. Tr. 19 (citing, e.g., 303, 308-09, 316-17, 477, 491, 683, 701, 710-11). The ALJ also cited psychologist Douglas A.

5 – OPINION & ORDER

Smyth's observation that Plaintiff was "cooperative throughout the session" and that her interpersonal skills were "intact though colored by emotionality and self-focused content" as contradicting her testimony that she had difficulty with coworkers and supervisors. Tr. 19 (citing Tr. 495). The ALJ also relied on Dr. Smyth's observation of Plaintiff's intact memory, average attention and concentration, grossly intact cognition, congruent affect, and no unusual deficits in persistence or pace upon examination. Tr. 19 (citing Tr. 496). Taken together, these countervailing symptom reports amount to substantial evidence supporting the ALJ's decision to discount Plaintiff's testimony about anxiety and depression because it conflicted with the record evidence.

Plaintiff argues the ALJ was not sufficiently specific about which testimony she was discounting for this Court to meaningfully review the ALJ's decision. Pl. Br, ECF No. 13 at 10 (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). Plaintiff argues that because the ALJ "failed to identify specific aspects of the medical record which were inconsistent with any particular aspects of Plaintiff's testimony," his stated rationale for discounting Plaintiff's testimony is too vague. *Id.* Plaintiff misreads the record on this point. The ALJ explicitly cited Plaintiff's testimony, and contrasted it with Plaintiff's medical history and "reported activities." Tr. 23, 24. The Ninth Circuit does not require an ALJ to "perform a line-by-line exegesis of the claimant's testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citation omitted). And the Court "will not fault the agency merely for explaining its decision with 'less than ideal clarity.' " *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). Since the ALJ's discussion of objective medical evidence was sufficient to "allow[ ] for meaningful review, " *id*, the Court rejects Plaintiff's contention the ALJ failed to articulate his reason for rejecting Plaintiff's testimony.

B.   *Conservative Treatment*

The ALJ also found Plaintiff's symptom testimony was inconsistent with a history of conservative treatment, and her failure to follow treatment recommendations. Tr. 19. "[I]n order to get benefits, an individual must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the prescribed treatment." *Orn v. Astrue*, 495 F.3d 625, 636-37 (9th Cir. 2007). An ALJ may reject a claimant's testimony when the severity of symptoms alleged is inconsistent with the level or frequency of treatment. *See Molina*, 674 F.3d at 1113 (quoting Social Security Ruling ("SSR") 96–7p, 1996 WL 374186, at *7 (July 2, 1996); *Burch v. Barnhart*, 400 F.3d 1111, 1114 (9th Cir. 2005).

The ALJ reasonably considered Plaintiff's conservative treatment when discounting her testimony about the extent of her mental health symptoms. Here, Plaintiff alleged "overwhelming anxiety" and depression (Tr. 18, 244, 246), but did not take any medications for these symptoms. Tr. 19 (citing Tr. 402-86, 503-720). The ALJ specifically highlighted that medications are routinely used to treat symptoms of anxiety and depression, and that Plaintiff's provider expressly encouraged her to obtain a "medication evaluation from psychiatric prescriber" and to "explore medication issues in depth with PCP." Tr. 18-19, 318. Plaintiff did not. *See id.* Instead, her treatment consisted only of outpatient psychotherapy, which the ALJ concluded undermined a claim of total disability. Tr. 19 (citing Tr. 402-86, 503-720). Though Plaintiff argues that the ALJ "is not a doctor or a mental health specialist, and is not qualified to determine whether medications may have been warranted for [her] conditions," Pl. Br. at 7, the ALJ reasonably relied on a generally conservative course of treatment to undermine the extent of Plaintiff's testimony about her anxiety and depression. Particularly because a medical provider

recommended that Plaintiff pursue medication to treat her mental health issues, and Plaintiff declined, it was reasonable for the ALJ to discount Plaintiff's testimony on this basis.

*C. Daily Activities*

The ALJ also discounted Plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 20. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

The ALJ reasonably concluded that several of Plaintiff's daily activities conflicted with her testimony about anxiety and depression. To discount a Plaintiff's testimony, and ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The ALJ contrasted Plaintiff's ability to "do laundry, vacuum, clean, shop in stores for groceries with her boyfriend," among other activities, with her testimony about otherwise extreme mental deficits including difficulty with concentration, motivation, and anxiety. Tr. 18, 20 (citing Tr. 244, 246-49). The ALJ made specific references to the record when identify these activities, which all suggested Plaintiff could function at a higher level, and perform more complex tasks than she alleged. Tr. 20. Although Plaintiff argues the ALJ singled out a "few periods of temporary well-being from a

sustained period of impairment," Pl. Br. at 9, the ALJ identified activities that Plaintiff did on a regular basis, and viewed them in the context of evidence that both supported and detracted from Plaintiff's allegations. Tr. 19-20, 247-48. In sum, this was another clear and convincing reason for the ALJ to rely upon to discount Plaintiff's testimony about the extent of her mental health issues.

## II.     Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122

9 – OPINION & ORDER

Plaintiff's friend completed a questionnaire describing Plaintiff's limitations. She noted Plaintiff has anxiety and is unable to go out by herself or talk to others on the phone because of panic attacks. She has quit every job she has tried because of these difficulties with social interaction. Tr. 198. Plaintiff often has nightmares from anxiety. She does not eat very often and barely manages her personal hygiene. Tr. 199. Plaintiff does not go out alone because she will get irritable and have a panic attack. Tr. 201. Plaintiff has angry outbursts and uncontrollable crying as a result of her anxiety. Tr. 202. The witness checked memory, completing tasks, concentration, understanding, following instructions, and getting along with others as abilities affected by Plaintiff's conditions. She noted Plaintiff does not follow spoken instructions well. She has had angry outbursts towards a manager at work in the past. Tr. 203. Plaintiff does not handle stress well and fears social interaction. Tr. 204.

The ALJ failed to analyze the lay witness testimony, but any error in failing to do so was harmless. Plaintiff's friend alleged similar limitations regarding Plaintiff's anxiety and overall mental health. *Compare* Tr. 38-45 (Plaintiff's testimony) *with* Tr. 198-204 (lay witness testimony). As discussed above, the ALJ provided legally sufficient reasons for concluding that Plaintiff's testimony was unpersuasive. These reasons apply with equal force to the lay witness testimony. Any error in rejecting the lay witness testimony was therefore harmless. *Molina,* 674 F.3d at 1117, 1122.

### III.    Medical Opinion Evidence

For disability claims filed on or after March 27, 2017, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The 2017 regulations eliminated the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources.

*Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the 2017 regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2-3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

11 – OPINION & ORDER

*A. LPC Shannon Modjeski*

On January 16, 2020, Licensed Professional Counselor (LPC) Shannon Modjeski evaluated Plaintiff. LPC Modjeski noted Plaintiff had a history of angry outbursts over small things, anxiety, and depression. Tr. 421. Plaintiff could not leave the house without her boyfriend. She had frequent nightmares. LPC Modjeski noted Plaintiff did use cannabis, which could be exacerbating her anxiety, but had already had significant mental health concerns prior to using cannabis. Tr. 422. Plaintiff had been sexually abused in childhood and placed in foster care for a short time (with the relative who had abused her) because of her parents' substance abuse. Plaintiff had a history of self-harm behavior including cutting herself. Tr. 424. LPC Modjeski diagnosed Plaintiff with generalized anxiety disorder and borderline personality disorder, and with cannabis use listed as a "rule out" possibility. Tr. 426. On January 21, 2020, LPC Modjeski noted Plaintiff's symptoms had not improved and were unstable. Plaintiff had observable anxiety and frustration. Tr. 432. LPC Modjeski continued to treat Plaintiff with Dialectical Behavior Therapy (DBT). Tr. 435. LPC Modjeski noted Plaintiff's excessive worry and anxiety did not appear to be improving with therapy. Tr. 445. Plaintiff continued to engage in self-harm. Tr. 448. Plaintiff continued to avoid certain situations due to her anxiety. Tr. 455. Plaintiff had ongoing problems with nightmares, ruminating thoughts, and poor sleep. Tr. 467.

On April 22, 2020, after treating Plaintiff for several months, LPC Modjeski completed a statement in which she opined Plaintiff had generalized anxiety disorder, borderline personality disorder, and PTSD. Tr. 487. She opined Plaintiff had only slightly responded to treatment with weekly therapy and a weekly group skills class. Plaintiff had panic attacks as well. Tr. 487. LPC Modjeski opined Plaintiff's anxiety resulted in a complete inability to function independently outside of her home. Tr. 487. Plaintiff had lost numerous jobs due to her anxiety. LPC Modjeski

opined Plaintiff would miss more than 4 days or work each month. LPC Modjeski opined Plaintiff would be markedly limited in her ability to sustain an ordinary routine without special supervision, interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. Tr. 488-89.

The ALJ found LPC Modjeski's opinion unpersuasive. Tr. 20. He rejected her opinion as inconsistent with Plaintiff's level of treatment, internally inconsistent, and lacking support because it did not describe Plaintiff's substance use. Tr. 20.

Regarding supportability, the ALJ adequately discussed the strength of the evidence underlying LPC Modjeski's opinion when finding it unpersuasive. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ reasonably found LPC Modjeski's opinion lacked support from the record because it was internally inconsistent and left out Plaintiff's substance abuse. As to its internal inconsistency, the ALJ noted that Dr. Modjeski opined that Plaintiff would not have significant limitations in her ability to concentrate for extended periods of time or perform simple tasks, but that somehow Plaintiff would have marked limitations in her ability to sustain an ordinary routine. Tr. 20 (citing Tr. 488). The ALJ also found it inconsistent that, despite the extreme limitations LPC Modjeski assessed (Tr. 487-89), her prognosis for Plaintiff was "good" if she continued treatment. Tr. 487. The ALJ further discounted LPC Modjeski's assessment because she indicated in her treatment notes that

13 – OPINION & ORDER

Plaintiff's cannabis use may be exacerbating her anxiety, but did not mention Plaintiff's substance use in her opinion. Tr. 20 (citing Tr. 679). The ALJ adequately considered the supportability of LPC Modjeski's opinion by examining the bases for her conclusions, and discounting them for their inconsistency and lack of thoroughness.

        The ALJ also adequately addressed the consistency of LPC Modjeski's opinion when finding it unpersuasive. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ reasoned that the opinion was "not consistent with [Plaintiff's] level of treatment, including the lack of treatment with medications." Tr. 20. Although LPC Modjeski assessed various marked mental limitations (Tr. 488-89) and believed that Plaintiff had a "complete inability to function independently" outside the area of her home due to an anxiety-related disorder (Tr. 487), Plaintiff took no medication for her anxiety or depressive symptoms .Tr. 19, 402-86, 503-720. The ALJ, in turn, reasonably inferred that Plaintiff's lack of treatment with medication undermined the extreme limitations LPC Modjeski assessed. Tr. 20. As he did with Plaintiff's symptom testimony, the ALJ contrasted Plaintiff's conservative treatment with the more significant limitations suggested in LPC Modjeski's opinion. LPC Modjeski was also the only provider who opined that Plaintiff would have debilitating mental limitations. Tr. 487-89. By contrast, the ALJ noted that the state agency psychological consultants opined that Plaintiff could perform simple work with limited public contact (Tr. 61-62, 72-73, 88-89, 100-01); and Dr. Smyth opined that Plaintiff would have moderate social limitations, variable pace, but no limitations in her ability to understand, remember, or carry out instructions. Tr. 499-500. The Court finds that the ALJ sufficiently

address the consistency and supportability factors, and supported her decision to discount LPC Modjeski's opinion with substantial evidence.

## IV.    Step Five

Plaintiff also argues the ALJ committed an independent error at step five by failing to include relevant limitations in his hypotheticals to the vocational expert (VE), stemming from erroneously leaving those limitations out of the RFC. Pl. Br., ECF No. 13 at 12-14. The RFC is the most a person can do, despite the person's physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, available at 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). An ALJ is only required to identify specific, supported, and credible limitations in the RFC; "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." *Bayliss*, 427 F.3d at 1217. The ALJ must include all relevant limitations from the RFC in his VE hypotheticals. *See Ford*, 950 F.3d at 1159.

In determining Plaintiff's RFC, the ALJ considered persuasive opinions from the state agency medical consultants who opined, in relevant part, that Plaintiff could perform short and simple instructions but not more detailed instructions, "so tasks should be broken down into

15 – OPINION & ORDER

simple task sequences." Tr. 61, 72, 88, 100. The ALJ found these opinions persuasive, and he limited Plaintiff to simple, routine tasks in the RFC. Tr. 17, 20. The vocational expert, in turn, testified that an individual limited to simple, routine tasks could perform jobs requiring a level two reasoning. Tr. 47-48. Plaintiff argues that the state agency consultants' limitation to "not more detailed instructions" was inconsistent with the RFC and the VE's resultant conclusion that she could perform jobs with a level two reasoning, which involves an ability to "carry out detailed but uninvolved written or oral instructions." Pl. Br. ECF No. 13 at 12.

The ALJ did not err because his RFC was a reasonable interpretation of the state agency doctors' opinions, and the VE's conclusion that Plaintiff could perform level two reasoning based on the RFC is likewise consistent with those opinions. An ALJ is not compelled to adopt, word-for-word, the limitations set forth by a medical source opinion the ALJ has found persuasive, so long as the RFC is "consistent with restrictions identified in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1174; *c.f. Thomas v. Saul,* 796 Fed. App'x 923, 926 (9th Cir. 2019) (noting no apparent conflict between a psychologist's assessment that claimant could not handle "detailed instructions" and level two reasoning). Here, the ALJ reasonably adapted the state agency psychologists' limitation that Plaintiff could perform short and simple instructions "but not more detailed instructions" by limiting Plaintiff to simple, routine tasks in the RFC. Tr. 17, 20. Omitting the phrase "but not more detailed instructions" from the RFC and from hypotheticals posed to the VE was not error, since the RFC captured that limitation, but just in different terms. *See, e.g., Cortez v. Comm'r. Soc. Sec. Admin.*, 2018 WL 1173423, at *4 (D. Or. Mar. 3, 2018) (upholding an RFC's interpretation of "detailed but uninvolved" instructions to mean instructions, which "may consist of a number of steps, none of which are complex."). What is more, there is nothing inconsistent between the state agency psychologists' limitation to "short

and simple instructions but not more detailed instructions," with reasoning level two's requirement of an ability to "carry out detailed *but uninvolved* written or oral instructions." U.S. Dep't of Labor, Dictionary of Occupational Titles (DOT), App. C (4th ed. 1991) (emphasis added). Here, the ALJ reasonably crafted an RFC and VE hypotheticals that interpreted the state agency medical consultants' opinions to mean that Plaintiff could perform simple, routine work, sometimes involving detailed but uninvolved instructions. Since this did not conflict with the persuasive medical opinions the ALJ relied upon, and the ALJ's step five determination was otherwise supported by substantial evidence, the ALJ did not err at step five.

## CONCLUSION

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case.

IT IS SO ORDERED.

DATED:     2/8/2024            .

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge